UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

                                  Case No. 2:10-cr-32

v.                                  HON. R. ALLAN EDGAR

ASHLEY ROSE WALKER,

       Defendant.

_____/


## REPORT AND RECOMMENDATION

       Defendant Ashley Rose Walker has filed a motion to suppress evidence seized as the fruit of an alleged unlawful search and seizure. Defendant argues that her Fourth Amendment rights were violated when Upper Peninsula Substance Enforcement Team (UPSET) officers placed a Global Positional System (GPS) device on her vehicle to track her movements without first obtaining a search warrant. A hearing was held on December 17, 2010. Testifying at the hearing were Detective Mark Hanes, Detective Trooper Jim Maki, and defendant Ashley Walker.

       UPSET officers first learned about defendant in July 2009, after receiving tips from alleged co-conspirators. Thereafter, UPSET officers made four controlled buys of crack cocaine from defendant. One buy occurred in October 2009, one buy occurred in January 2010, and two buys occurred on February 1, 2010. After the first controlled buy, a Guardian 811 GPS tracking unit was placed on defendant's vehicle.[1] This occurred on four separate occasions, in November 2009,

---

[1] The Guardian 811 is a GPS unit with a cell phone antenna. The unit was powered by battery in this case. Installation is by "slap on" and is held in place by magnets. The battery can be placed on the vehicle separately, allowing the battery to be changed. Installation takes about 30 seconds. Battery life for the unit
(continued...)

December, 2009, March 2010 and July 2010. In addition, the UPSET officers conducted visual surveillance of defendant on numerous occasions. During the course of their investigation, UPSET received eight to ten tips that defendant was trafficking in cocaine. The installation of the GPS unit on defendant's vehicle occurred in parking lots open to the public.

The GPS tracking device was placed on the bumper of defendant's 1999 GMC Yukon. During all four installations of the GPS unit, UPSET officers learned that the vehicle traveled to Chicago. Live track was not used extensively while the GPS was on defendant's vehicle. The "live track" was used when a "fence" was broken. Chicago was believed to be where defendant was purchasing cocaine. The GPS installation in July of 2010 revealed that the vehicle made a trip to Chicago. During the return trip from Chicago, defendant was stopped by police at Koski Corners in the Upper Peninsula of Michigan. Before the stop, police obtained state search warrants to search defendant's vehicle and apartment. The information learned from the GPS unit was used to support the requested warrants.

The GPS unit was used after UPSET officers concluded that defendant was aware of the physical surveillance of her vehicle. Defendant rented a vehicle in April of 2010 which was subject to physical surveillance. Defendant testified that she felt the use of the GPS unit was an

---

[1](...continued)

lasts one to ten days, depending on use and climate. The unit can be called using the Guardian Skytrack system. Using the "live track" system, information regarding vehicle location, speed and direction of travel can be obtained while the unit is on the vehicle. The GPS unit stores all information on where the vehicle has been and this information can be downloaded. "Fences" can be set to notify officers when the vehicle enters or leaves an area. Use of "live track" significantly reduces battery life. "Live track" only works when the unit is in cell service range. According to Detective Hanes, GPS tracking devices, without "live track" ability, are available to the general public. Detective Hanes was not sure if GPS with "live track" was available to the public.

invasion of her privacy. She also testified that she felt the physical surveillance was an invasion of her privacy.

UPSET officers stopped the vehicle in Western Marquette County. The vehicle was driven to the Michigan State Police Post in Negaunee, where it was searched. Two ounces of crack cocaine and one half pound of marijuana were discovered inside the vehicle. A search of defendant's apartment revealed scales, packaging material and other drug trafficking evidence. Defendant was advised of her Miranda rights and she agreed to make a statement. Defendant admitted her involvement in drug trafficking.

Relying on *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), defendant maintains that use of the GPS unit was a Fourth Amendment search and was unreasonable without a warrant. Defendant also relies upon Chief Judge Kosinski's dissent in *United States v. Pineda-Moreno*, 617 F.3d 1120 (9th Cir. 2010), to support her motion to suppress. Judge Kosinski explained:

> I don't think that most people in the United States would agree with the panel that someone who leaves his car parked in his driveway outside the door of his home invites people to crawl under it and attach a device that will track the vehicle's every movement and transmit that information to total strangers. There is something creepy and un-American about such clandestine and underhanded behavior. To those of us who have lived under a totalitarian regime, there is an eerie feeling of deja vu.

In *California v. Greenwood*, 486 U.S. 35 (1988), the court held that society would not recognize as reasonable an expectation of privacy in garbage left at the street for collection. The practice of government officials searching an individual's garbage on a daily basis is no less "creepy" or "un-American" than the use of a GPS unit to track a vehicle traveling the public roadways.

Creepiness does not render observation by law enforcement officials of something in public view a Fourth Amendment search.

In *United States v. Knotts,* 460 U.S. 276 (1983), the Eighth Circuit overturned a conviction for conspiracy to manufacture controlled substances because the investigators used a radio control beeper to monitor a container of chemicals transported by the defendant. On appeal the United States Supreme Court reversed the circuit court, finding that a beeper placed in the container of chemicals that was transported to the defendant's cabin was not a Fourth Amendment search or seizure because there existed no reasonable expectation of privacy in the transportation of the chemicals.

Law enforcement officers placed a beeper in a five gallon drum of chloroform purchased by one of the co-defendants. The officers were able to trace the chloroform from its point of purchase in Minneapolis to a cabin near Shell Lake, Wisconsin. Officers followed the vehicle driven by one of the defendants that contained the chloroform. The officers lost the vehicle but were able to find the location of the vehicle with the monitoring device. The vehicle was located at the cabin. Officers continued surveillance of the cabin and ultimately secured a search warrant, the execution of which led to the discovery of a methamphetamine laboratory within the cabin.

In order to violate the Fourth Amendment the person invoking its protection must be able to claim a justifiable, reasonable or a legitimate expectation of privacy that was breached by a governmental action. The court found no "expectation of privacy extended to the visual observation of [the] automobile arriving on his premises after leaving a public highway, nor to movements of objects such as a drum of chloroform outside the cabin in the "open fields." *Id.* at 282.

Further, the use of the beeper to signal the presence of the automobile combined with visual surveillance from public places along the transportation route did not violate the Fourth Amendment. "Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case. The court noted that when the government uses enhanced technology for surveillance purposes, it risks pushing "into the private sphere protected by the Fourth Amendment." For instance, if the surveillance continues beyond that which is public and into the private residence, the surveillance that occurred where the expectation of privacy is legitimate would be considered unlawful.

In *United States v. Karo*, 468 U.S. 705 (1984), the government obtained a court order authorizing the placement of a monitoring device on cans of ether ordered by defendants. One of the defendants picked up the can of ether and DEA agents were able to determine that the can was inside a house. The ether was moved to two different houses before it was placed inside a locker in a commercial storage facility and then again moved to another storage facility. The agents then learned that the beeper was inside a house and obtained a search warrant to search the house based in part on the information from the beeper. The defendants were arrested and cocaine was seized. The Supreme Court concluded that there was no Fourth Amendment interest to be free from the initial placement of the beeper because no privacy concerns were infringed. However, the monitoring of the beeper inside the private residence that is not open to visual surveillance violated the Fourth Amendment rights of anyone who had a reasonable expectation of privacy in the residence. In that case, however, because there was sufficient untainted evidence to establish that the ether was located inside the house, the evidence was not suppressed. The location of the beeper

inside the storage facility did not raise Fourth Amendment concerns and because the officers witnessed the ether moved from storage to the inside of a truck, which traveled the highways, there were no Fourth Amendment concerns implicated in that case.

Simply on the face of these two Supreme Court cases, it appears that GPS monitoring of a vehicle, where the monitor was placed on the vehicle when located in a public place and monitored while moving along the public highway system, does not implicate Fourth Amendment privacy concerns. However, defendant argues that the case of *United States v. Maynard*, 615 F.3d 544 (DC Cir. 2010), supports the position that the evidence must be suppressed.

In that case, the defendants moved to suppress evidence obtained for a number of reasons, including the placement of a GPS device on one of the defendant's vehicles. The police tracked the defendant's vehicle with a GPS device 24 hours a day over a four week period. This, according to the circuit court, distinguished the facts from *Knotts* which left open the question of whether prolonged 24-hour surveillance without a warrant was constitutional. It was recognized that two other circuit courts held that the use of GPS tracking devices to monitor the movement of a vehicle over a prolonged period did not violate the Fourth Amendment. *United States v Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), and *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007). The DC Circuit distinguishes those holdings because the defendants did not contest whether the "prolonged surveillance is a search" in those cases.

Further, the DC Circuit found that the entire course of defendant's movements over the month long surveillance period was not actually exposed to the public because of the likelihood that all of the defendant's movements would not have been observed. As further support, the court stated that a reasonable person would not expect to be watched in public for 24 hours a day over the

course of a month. The court found the existence of a reasonable expectation of privacy in an individual's movements in a vehicle over the course of month. The court found that the placement of the GPS tracking device violated the Fourth Amendment interests in that privacy and is unconstitutional without a warrant.

In this case, the GPS tracking device was placed on defendant's vehicle on four separate occasions.[2] The GPS tracking device was not continually monitored by UPSET or DEA agents. The device was placed on defendant's vehicle while the vehicle was parked in a public location and was used while defendant was on public highways.

In *United States v. Sparks*, 2010 WL 4595522 (D. Mass.) (unpublished) (attached), the Court faced a similar motion to suppress. That decision comprehensively addresses the questions presented in this case. That decision is persuasive and likely cannot be improved upon by the undersigned.

The Supreme Court has long recognized that "what a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Defendant Walker's movements in her vehicle were knowingly exposed to the public. Law enforcement officers could have observed her by physical surveillance without implicating the Fourth Amendment. Use of technology to enhance or improve the surveillance of what an individual exposes to the public does not implicate the Fourth Amendment. In *California v. Ciraolo*, 476 U.S. 207 (1986), Ciraolo had erected a 10-foot fence to conceal a marijuana crop in his backyard. Law enforcement used planes to fly over Ciraolo's property to observe the marijuana.

---

[2]The GPS unit was placed on defendant's vehicle from November 9-22, 2009; December 7-15, 2009; March 4-April 13, 2010 (with three battery changes), and July 21-27, 2010.

The use of the plane did not turn the observation into a Fourth Amendment search. *See also Florida v. Riley*, 488 U.S. 445 (1989); *Dow Chemical Co. v. United States*, 476 U.S. 227 (1986).

In *United States v. White*, 401 U.S. 745 (1971), police officers put a wire on an informant to record conversations the informant had with White in White's home. The wire was used to transmit and record conversations between White and the informant. White challenged the use of the wire as a warrantless Fourth Amendment search. The Court explained:

> It is thus untenable to consider the activities and reports of the police agent himself, though acting without a warrant, to be a "reasonable" investigative effort and lawful under the Fourth Amendment but to view the same agent with a recorder or transmitter as conducting an "unreasonable" and unconstitutional search and seizure. Our opinion is currently shared by Congress and the Executive Branch, Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 212.

*Id.* at 753.

In *United States v. Cervantes-Garcia*, 940 F.2d 1536, 1991 WL 144508, at *1 (9th Cir.) (unpublished) (attached), the Court explained:

> In *Dow Chemical v. United States,* 476 U.S. 227 (1986), the Court held that the government had not conducted a "search" under the Fourth Amendment when it took pictures of a facility with a "precision aerial mapping camera" at various altitudes. 476 U.S. at 229. The Court noted, however, that "highly sophisticated surveillance equipment not generally available to the public, *such as satellite technology, might be constitutionally proscribed* absent a warrant." *Id.* (emphasis added).
>
> We believe that aerial surveillance with gyroscopic binoculars of ordinary fourteen power does not constitute a search under the Fourth Amendment. According to the pilot's testimony, the gyroscopic binoculars "simply minimized vibrations to allow the individual using the binoculars to stay focused in one spot." Gyroscopic binoculars are not more intrusive than precision aerial mapping cameras sanctioned in *Dow Chemical* and do not pose any more of a constitutional problem. *See United States v. Allen,* 675 F.2d 1373, 1381-82 (9th Cir.1980) (observation using ordinary binoculars does not constitute a Fourth Amendment "search"), *cert. denied,* 454 U.S. 833 (1981).

In *United States v. Ellison*, 462 F.3d 557 (6th Cir. 2006),[3] the Court faced an assertion that running a license plate number through the LEIN system constituted a Fourth Amendment search. The Court explained:

> Moreover, the computer investigation utilized in this case was far less invasive than other government actions that fall outside the protections of the Fourth Amendment. *See, e.g., Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (entering private property with "No Trespassing" signs to observe marijuana plants in an "open field" not visible from outside the property); *Dow Chemical Co. v. United States,* 476 U.S. 227, 239, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986) (photographing an industrial complex with a precision aerial mapping camera); *California v. Ciraolo,* 476 U.S. 207, 213-14, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (using aerial surveillance in public airspace to observe the curtilage of a private residence); *Smith v. Maryland,* 442 U.S. 735, 745-46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (placing a pen register on a phone line to record the numbers dialed from a private residence). This is not a case where the police used a technology not available to the public to discover evidence that could not otherwise be obtained without "intrusion into a constitutionally-protected area." *Kyllo v. United States,* 533 U.S. 27, 34-35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (holding that the use of thermal-imaging technology to detect heat inside a private home violates the Fourth Amendment). The technology used in this case does not allow officers to access any previously-unobtainable information; it simply allows them to access information more quickly. As the information was obtained without intruding upon a constitutionally-protected area, there was no "search" for Fourth Amendment purposes.

*Id.* at 562.

Defendant knowingly exposed her vehicle to the public when she drove on public roads. The GPS unit was not used to learn of activities in defendant's house or other protected areas.

Accordingly, it is respectfully recommended that defendant's Motion to Suppress Evidence (Docket #13) be denied.

---

[3] The dissenting opinion in *Ellison* offers ample support for defendant in this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 7, 2011