UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                       Case No. 2:10-cr-32

v.

                                       HON. ROBERT HOLMES BELL

ASHLEY ROSE WALKER,

      Defendant.

_____/

## **O P I N I O N**

This matter is before the Court on Defendant's objections, (Dkt. No. 26), to Magistrate Judge Greeley's January 7, 2011, Report and Recommendation ("R&R"). (Dkt. No. 25.) In the R&R, the Magistrate Judge recommends that Defendant's Motion to Suppress Evidence, (Dkt. No. 13), be denied. The Court is required to review *de novo* those portions of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.* For the reasons which follow, Defendant's objections will be overruled, and the R&R will be approved and adopted as the opinion of the Court.

### **I. Background**

Defendant does not dispute the Magistrate Judge's factual findings – indeed, it appears that at least with respect to Defendant's motion to suppress, the facts of this case are not contested. Officers of the Upper Peninsula Substance Enforcement Team ("UPSET") first learned about Defendant in July 2009, after receiving tips from alleged co-conspirators.

(R&R 1.) Thereafter, UPSET officers made a controlled buy of crack cocaine from Defendant. (*Id.*) After the controlled buy, but without a warrant, officers placed a Guardian 811 Global Positional System ("GPS") tracking device on Defendant's vehicle. (*Id.*) The GPS device was removed, then reattached on three separate occasions. (*Id.* at 1-2) The Magistrate Judge found, and Defendant does not contest, that the GPS device was placed on her vehicle when it was in parking lots open to the public. (*Id.* at 2.) During this period, UPSET officers also received eight to ten tips that Defendant was trafficking in cocaine and made two additional controlled buys from Defendant. (*Id.*)

The GPS device used in this case has a "live track" feature which allows the device to be tracked in real time. (*Id.* at 2 n.1.) When live track is activated, the device makes regular reports on its location and on its speed and direction of travel via an integrated cellular device. However, live track was not used extensively in this case, as it quickly reduces the device's battery life. (*Id.* at 2.) Rather, the officers made use of a feature that allows the device to report its location when it crosses a "fence" – a preset virtual perimeter for a geographic area. (*Id.*) Officers believed that Defendant was purchasing crack cocaine from a source in Chicago. (*Id.*) On July 27, 2010, UPSET officers received text messages indicating that Defendant's vehicle had crossed a "fence" north of Chicago, and they confirmed that the vehicle was northbound. (Dkt. No. 20, Response to Motion to Suppress 7.) The officers obtained a warrant to search Defendant's vehicle and apartment. (*Id.*) The officers then positioned themselves along the route back to Defendant's home and were able

to stop her vehicle in western Marquette County, Michigan. (R&R 3.) A search of the vehicle turned up two ounces of crack cocaine and one half pound of marijuana. (*Id.*) A search of Defendant's apartment turned up scales, packaging material, and other evidence of drug trafficking. (*Id.*) Defendant was advised of, and waived, her Miranda rights, and she admitted her involvement in drug trafficking. (*Id.*)

Defendant moved to suppress that evidence, and the Magistrate Judge recommends that this Court deny her motion. Defendant now objects to the R&R, asserting that the evidence was the fruit of a poisonous tree – she alleges that the warrantless placement and monitoring of the GPS device constituted an unconstitutional search and seizure under the Fourth Amendment. (Objections ¶ 6.) Defendant also asserts for the first time in her Objections that GPS monitoring of Defendant's vehicle violates the constitution by its alleged "chilling effect" on her exercise of her First Amendment Rights. (*Id.* at ¶ 20.)

## II. Discussion

**A.)** **Fourth Amendment Search**

The Magistrate Judge recommends that this Court join the Supreme Court in holding that "what a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection," *Katz v. United States*, 389 U.S. 347, 351 (1967), and find that Defendant knowingly exposed her vehicle's location to the public when she drove on public roads. (R&R 7, 9.) The Court is inclined to agree and will deny Defendant's objections regarding a Fourth Amendment search on that basis.

3

That said, the Court acknowledges that this is a contentious issue regarding which there have been great differences of opinion among the federal courts. The starting point for all such analyses must lie in the Fourth Amendment, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

There is nothing in the text of the Amendment which would positively require a warrant in order to make a search, nor indeed is there even a requirement of probable cause so long as the search is not "unreasonable," but the Amendment does require probable cause for a warrant to issue, and the Supreme Court has long presumed that a warrant is required for a search to be reasonable. *See United States v. Leon*, 468 U.S. 897, 913-14 (1984). Thus, warrantless searches are presumptively unreasonable. *See Mincey v. Arizona*, 437 U.S. 385, 390 (1978). There are, however, a great many exceptions to this rule in which warrantless searches are deemed "reasonable" and thus quite acceptable. *See, e.g., Draper v. United States*, 358 U.S. 307, 310 (1959). In a great many of these cases, not even probable cause is required to make a search reasonable. *See, e.g., Vernonia Sch. Dist. 47j v. Acton*, 515 U.S. 646 (1995) (random drug testing of student athletes); *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (search of a probationer's home); *New York v. Burger*, 482 U.S. 691, 699-703 (1987) (search of the premises of certain highly regulated businesses); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989) (drug and alcohol testing of railway employees). Often,

the less stringent standard of "reasonable suspicion" applies. *See Terry v. Ohio*, 392 U.S. 1, 37 (1968) (Douglas, J., dissenting). Of course, if there is no search and no seizure (and no warrant issued), the Fourth Amendment does not require the application of any standards or requirements, even the overarching standard of reasonableness, because the protections of the Fourth Amendment are not triggered.

"A 'search' occurs 'when an expectation of privacy that society is prepared to consider reasonable is infringed.'" *United States v. Karo*, 468 U.S. 705, 712 (1984) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). This standard breaks down into two discrete inquiries: "first, has the [defendant] manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). A reasonable expectation of privacy may be affected by a number of factors, and although the Fourth Amendment protects people, not places, the question of what protection it affords those people generally requires reference to a place. *Katz*, 389 U.S. at 361 (Harlan, J., concurring). A person's expectation of privacy, and the reasonableness of that expectation, is higher in some areas and lower in others. The level of protection offered by the Fourth Amendment corresponds to the expectation and its reasonableness – the protection is strongest in the home and diminishes progressively in increasingly public venues and activities. With respect to the interior of vehicles, because "[o]ne has a lesser expectation of privacy in a motor vehicle," "'[t]he

5

search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building.'" *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (quoting *Almeida-Sanchez v. United States*, 413 U.S. 266, 279 (1973) (Powell, J., concurring)). The exterior of a vehicle has less protection still. *See United States v. Rascon-Ortiz*, 994 F.2d 749, 754 (10th Cir. 1993) ("The undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy."). And, as noted above, what remains a steadfastly cardinal rule in a universe of varying expectations is that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351.

As Defendant notes in her objections, the Supreme Court has not yet considered whether GPS monitoring of a vehicle's location constitutes a Fourth Amendment search, but several circuit courts have and are split on the issue. (Objections ¶ 11.) Defendant relies on a recent decision by the Court of Appeals for the District of Columbia Circuit holding that prolonged GPS monitoring – 24 hours a day for four weeks – was a Fourth Amendment search and was unreasonable without a warrant. *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). It appears, however, that the great weight of the law from other federal circuits rejects this view. *See United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) (holding that GPS tracking is not a search); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1217 (9th Cir. 2010) ("We conclude that the police did not conduct an impermissible search of [defendant's] car by monitoring its location with mobile tracking devices."), *reh'g en banc*

*denied* 617 F.3d 1120 (9th Cir. 2010); *see also United States v. Sparks*, No. 10-10067, 2010 U.S. Dist. LEXIS 120257, at *34 (D. Mass. Nov. 10, 2010) ("[N]o warrant or other court order is necessary to install or monitor the GPS."); *Morton v. Nassau County Police Dep't*, No. 05-CV-4000, 2007 U.S. Dist. LEXIS 87558, at *10 (E.D.N.Y. Nov. 27, 2007) ("[T]he use of the GPS Device was not an unreasonable search or seizure in violation of the Fourth Amendment."); *United States v. Jesus-Nunez*, No. 1:10-CR-00017, 2010 U.S. Dist. LEXIS 76107, at *12 (M.D. Pa. July 27, 2010) ("[T]here was no Fourth Amendment search or seizure by the Government's use of the GPS device."); *United States v. Williams*, 650 F. Supp. 2d 633, 668 (W.D. Ky. 2009) ("[T]he Court is comfortable in concluding that no search warrant or other court order was required to permit the officers to lawfully attach the electronic tracking devices to the exterior of [defendants'] automobiles."); *United States v. Burton*, 698 F. Supp. 2d 1303, 1307 (N.D. Fla. 2010) ("There is no Fourth Amendment violation for using a tracking device . . . where the substitute is for an activity, namely following a car on a public street, that is unequivocally not a search within the meaning of the amendment." (internal quotation marks omitted)).

These courts have generally recognized *United States v. Knotts*, 460 U.S. 276 (1983), as controlling. In *Knotts*, narcotics officers placed a "beeper" – a radio tracking device – into a five gallon drum of chloroform intended for purchase by one of the co-defendants. *Id.* at 278. When the target did, in fact, purchase the drum and place it in his vehicle, officers began following him back to his destination. *Id.* The target realized he was being

followed and successfully evaded the officer. *Id.* Thereafter, the officers relied exclusively on the tracking device as located by helicopter. *Id.* In holding that tracking the container was not a Fourth Amendment search, the Court noted that:

> A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [defendant] traveled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property. . . .
> Visual surveillance from public places along [defendant's] route . . . would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but also on the use of the beeper to signal the presence of [defendant's] automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.

*Id.* at 281-82.[1] On its face, this opinion would seem to apply directly to the facts of the present case.

Nonetheless, Defendant offers several reasons in her objections why she believes the reasoning of *Knotts* should not apply to her. She argues first that the beeper was not on the vehicle itself and that "[t]he defendant[] had, in some ways, opened [himself] up to receiving materials with which someone had tampered." (Objections ¶ 26.) The Court finds this attempt to distinguish Defendant's facts unconvincing. Defendant does not argue that the

---

[1] It is notable that in *Knotts*, the visual surveillance which the Supreme Court said would have sufficed to replicate the information supplied by the beeper would not only have been difficult, but, as revealed by the facts of the case, it was demonstrably impossible. *Id.* at 278.

8

officers were conducting an illegal search when the GPS device was attached. Indeed, at least insofar as it affects a search claim, the mechanism by which the GPS device was attached to Defendant's property seems to be of little moment.[2] Here, as in *Knotts*, investigating officers engineered an effective mechanism by which they could attach a device to the vehicle. The rationale of *Knotts* would be little altered if the beeper had been placed on the defendant's vehicle rather than in a drum of chloroform which the officers arranged to sell to the defendant. This objection will be overruled.

Defendant also objects that the R&R emphasizes that the GPS device was used on public highways and "overlooks the fact that people seldom drive only on public highways." (Objection ¶ 29.) This emphasis is appropriate. While monitoring the location of the vehicle entering a private garage may very well be a violation of the privacy protected by the Fourth Amendment, *see Karo*, 468 U.S. 705, the Magistrate Judge appropriately noted that this did not happen here. Here, there is no evidence, and Defendant does not even allege, that the officers used the GPS device to monitor her location anywhere other than public thoroughfares. To the extent that Defendant is concerned about *potential* privacy violations, (*see* Objections ¶ 29 ("What happens when the subject turns into the private driveway, onto the curtilage of a house, and pulls behind a fence where the public cannot see the car?")), her concern is not shared by the Fourth Amendment. The Fourth Amendment does not

---

[2] This mechanism is more relevant to Defendant's separately-addressed allegation of illegal seizure under the Fourth Amendment.

protect against unreasonable potential invasions of privacy, it protects against actual invasions of privacy. *See Dow Chem. Co. v. United States*, 476 U.S. 227, 239 (1986) ("Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations. '[We] have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.'" (quoting *Karo*, 468 U.S. at 712)). This objection, too, will be overruled.

Finally, Defendant objects that *Knotts* can be distinguished by the technological differences between *Knotts*'s beeper and the GPS device used here. (Objections ¶ 30.) Indeed, the level of technology employed in surveillance has been a concern of the Supreme Court. In *Kyllo v. United States*, 533 U.S. 27 (2001), the Supreme Court held that the warrantless use of a thermal imager to measure the relative heat of a home's exterior walls constituted an unreasonable search. In part, the Court based its decision on the level of technology employed: "[w]e think that obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area constitutes a search – at least where (as here) the technology in question is not in general public use." 533 U.S. at 34 (citation and internal quotation marks omitted).

While this Court certainly does not contest the holding in *Kyllo*, the holding does not preclude the use of GPS as officers employed it here. Though it is true that some courts

have focused on the level of technology employed,[3] the technology in and of itself does not appear to have been the Supreme Court's main concern in *Kyllo*. Rather, it was the intrusion into the privacy of the home which troubled the Court. Here, the technology employed did not reveal information that could not otherwise have been obtained without physical intrusion into a constitutionally protected area – it revealed information (the location of a vehicle on public roads) that could have been readily obtained by visual surveillance of a public area. *See Morton*, 2007 U.S. Dist. LEXIS 87558, at *8-9 ("The use of the GPS Device did not permit the discovery of any information that could not have obtained by following an automobile traveling on public roads, either physically or through visual surveillance."); *United States v. Dantzler*, No. 10-0024, 2010 U.S. Dist. LEXIS 68753, at *18 (W.D. La. June 16, 2010) ("The OnStar system revealed no more information than what law enforcement officers could have observed from constant surveillance of the vehicle."); *Jesus-Nunez*, 2010 U.S. Dist. LEXIS 76107, at *9 ("[N]o such extra-sensory enhancements [as those in *Kyllo*] are implicated here.").

Moreover, the Supreme Court explicitly limited its holding to technologies which are not in general use. Defendant notes that one of the officers in this case "was not sure" if

---

[3] This focus appears to be particularly prevalent in state courts applying *Kyllo* to their own constitutions which generally appear to provide broader protections than the Constitution of the United States. *See, e.g., State v. Jackson*, 76 P.3d 217, 223 (Wash. 2003) (Washington Constitution); *Commonwealth v. Connolly*, 913 N.E.2d 356, 369 (Mass. 2009) (Massachusetts Constitution); *People v. Weaver*, 909 N.E.2d 1195, 1199 (N.Y. 2009) (New York Constitution); *State v. Holden*, No. 1002012520, 2010 Del. Super. LEXIS 493, at *24-25 (Del. Super. Ct. Dec. 14, 2010) (Delaware Constitution).

GPS devices with live tracking capabilities are available to the public. In dissenting to a denial of rehearing en banc in *Pineda-Moreno*, Judge Kozinski has indicated that such devices are readily available to the public – in fact, he directs the reader to a website that sells them. 617 F.3d at 1126 ("Acting together [GPS satellites and cell towers] can provide law enforcement with a swift, efficient, silent, invisible and cheap way of tracking . . . movements . . . . *See*, *e.g.*, GPS Mini Tracker with Cell Phone Assist Tracker, http://www.spyville.com/passive-gps.html (last visited July 17, 2010)." (emphasis omitted)).[4] Indeed, the prevalence of GPS-enabled cellular telephones ensures that a great many Americans are walking around with such technology in their pockets and handbags. *See In re Application of the United States of America*, 727 F. Supp. 2d 571, 580 (W.D. Tex. 2010) ("Estimates from three years ago were that over 90% of cell phones then in use had GPS capabilities, through which the target phone could be located to within as little as 50 feet."). These are in general use and are used for any number of purposes. *See*, *e.g.*, *id.* (emergency care providers use GPS-enabled phones to pinpoint 911 calls and owners use GPS to locate lost phones); *Vehicle IP, LLC v. Gen. Motors Corp.*, 578 F. Supp. 2d 1107, 1112 (W.D. Wis. 2008) (software allows GPS-enabled cell phones to receive turn-by-turn driving directions); *Rico v. Davis Bancorp, Inc.*, No. 08 C 2721, 2009 U.S. Dist. LEXIS 117082, at *3-4 (N.D. Ill. Dec. 16, 2009) (shipping company uses GPS-enabled cell phones

---

[4]In fact, this website sells a number of live GPS tracking systems, including some which appear to be more advanced than the one at issue here. *See* GPS Tracking System, http://www.spyville.com/gps-unit.html (last visited February 9, 2011).

to track their trucks and communicate with their drivers); *United States v. Hinckley*, 625 F. Supp. 2d 3, 27 (D.D.C. 2009) (hospital requires a patient to carry a GPS-enabled cell phone so that they can track his movements upon release); *Richmond v. State*, No. 49A02-1004-CR-449, 2010 Ind. App. Unpub. LEXIS 1793, at *3-4 (Ind. Ct. App. Dec. 21, 2010) (theft victim uses GPS-enabling to track his stolen phone). That the officers here chose to use a specifically engineered GPS tracking device rather than merely duct-taping an iPhone to Defendant's bumper is of little moment. The technology in this case is in general use, and it was not used to acquire any information that could not otherwise have been obtained without physical intrusion into a constitutionally protected area. The objection will be overruled.

Defendant warns that allowing warrantless GPS monitoring of vehicles might lead to "shotgun" tactics: placing a GPS unit on any number of cars, then waiting to see which device leads to evidence of a potential criminal violation. (Objections ¶ 24.) While such tactics would perhaps be troubling, the Upper Peninsula Substance Enforcement Team has shown neither the inclination nor the capability to employ such tactics, and they certainly did not employ them here. As noted above, the Supreme Court has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." *Karo*, 468 U.S. at 712. When faced with a similar challenge, the Seventh Circuit stated that "[i]t would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment." *Garcia*, 474 F.3d at 998.

This Court agrees. "[T]he reality hardly suggests abuse; if such dragnet-type law enforcement practices as [Defendant] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Knotts*, 460 U.S. at 283-84 (citation and internal quotation marks omitted). This objection, too, will be overruled.

As an alternative to warrantless GPS monitoring, Defendant proposes that "[a]t a time when the Supreme Court has not yet ruled on this issue, it seems best to err on the side of at least minimal judicial oversight. The reasonable-suspicion standard would afford such protection and would conform with similar past decisions by the Supreme Court." (Objections ¶ 19.) The reasonable suspicion standard has been deemed an acceptable basis for GPS monitoring of a vehicle by the Eighth Circuit: "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time."[5,6] *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010). Here, the officers certainly had reasonable suspicion (and very likely even probable cause) to believe that both Defendant and her vehicle were engaged in the trade of illegal drugs – they had purchased crack cocaine from Defendant before they installed the GPS device on her vehicle.

---

[5] Notably, this opinion does not *require* reasonable suspicion. It merely states that when the police have reasonable suspicion, a warrant is not required. *Id.*

[6] Notably, too, the "reasonable period of time" described in this opinion appears to have been five months. *See id.* at 607 (GPS device installed in May 2007 and monitored until October 2007, with seven battery changes).

But Defendant has presented no authority, and the Court cannot locate any, to suggest that reasonable suspicion would be a proper standard to apply even if this Court were to require judicial oversight. When investigating officers approach a judge for permission to pursue an action, the writ they receive is a warrant. The issuance of a warrant upon reasonable suspicion (without more) would be unconstitutional, *see* U.S. Const. amend IV ("[N]o Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis added)), and issuance of any other writ would, as far as this Court can determine, be unprecedented.[7] The Court would decline to expand the role of the judiciary in such a manner even if constitutionally permitted to do so. Insofar as this is an objection, it will be overruled.

**B.)    Fourth Amendment Seizure**

In recommending that Defendant's motion be denied, the Magistrate Judge also recommends that this Court find that Defendant's vehicle was not illegally seized.[8] "A 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Karo*, 468 U.S. at 712 (quoting *Jacobsen*,

---

[7]And possibly also unconstitutional, insofar as it could be deemed a workaround to a warrant issued upon probable cause.

[8]It appears from her Memorandum in Support of Motion to Suppress, (Dkt. No. 18), that the only seizure argument raised by Defendant was that her vehicle was illegally seized as the fruit of the poisonous tree of an illegal search. In her objections, Defendant emphasizes an argument that the placement of the GPS device was itself an illegal seizure. For the purposes of this discussion, the Court will assume that this issue was properly raised in the motion.

15

466 U.S. at 113). In her objections, Defendant argues that officers seized her car by attaching the GPS device to her bumper; that they interfered with her property interest by modifying her vehicle without her permission. (Objections ¶ 15-18.)

This argument confuses the law of trespass with the protections of the Fourth Amendment. "[T]he law of trespass confers protections from intrusion by others far broader than those required by Fourth Amendment" – "trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest." *Oliver v. United States*, 466 U.S. 170, 183 n.15 and 183 (1984); *see also Karo*, 468 U.S. at 712-13 ("The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation.") Here, as in *Karo*, although the officers may have added to Defendant's property "an unknown and unwanted foreign object, it cannot be said that anyone's possessory interest was interfered with in a meaningful way. At most, there was a technical trespass on the space occupied by the [device]." *Id.* at 712. "'[One] may reasonably expect that strangers will leave his car alone, but that is not an expectation of privacy.'" *Sparks*, 2010 U.S. Dist. LEXIS 120257, at *17 (quoting *People v. Weaver*, 909 N.E.2d 1195 (N.Y. 2009) (Smith, J., dissenting)). As the Seventh Circuit said in *Garcia*,

> The defendant's contention that by attaching the memory tracking device the police seized his car is untenable. The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word.

474 F.3d at 996.

Defendant also contends that this must be a seizure under the Fourth Amendment because "[p]olice officers attempting to install a device could damage the vehicle. . . . Cosmetic damage can diminish a car's resale value, and installing devices could easily cause scratches and dents." (Objections ¶ 17.) Defendant does not allege that any such damage occurred here, and as noted several times previously, this Court will not find a violation of the Fourth Amendment where the only infraction is hypothetical. *See Dow Chem. Co.*, 476 U.S. at 239. Even if such minor damage had occurred and had occurred without the officers securing a warrant, it is by no means certain that that damage would create a Fourth Amendment violation. *See Cardwell*, 417 U.S. 583 (no Fourth Amendment unreasonable search and seizure in removing paint scrapings from a parked car). These objections will be overruled.

**C.)      First Amendment "Chilling Effect"**

Defendant now raises, for the first time in her objections, the argument that police use of GPS monitoring could also "effectively chill a person's First Amendment freedoms."[9]

---

[9]It is possible that Defendant was attempting to argue that chilling effects on the exercise of First Amendment freedoms also implicate the Fourth Amendment right to be free of unreasonable searches and seizures. (*See* Objections ¶ 20 ("Police use of GPS monitoring also violates an individual's privacy interests by violating a person's First Amendment rights . . . ."; "a 'chilling effect' would deter most people from uninhibitedly using their vehicle and, thereby, effectively interfering with their possessory interests in the vehicle.").) To the extent that Defendant is so arguing, she has not offered, and the Court is not aware, of any authority to indicate that suppressing a First Amendment freedom constitutes a Fourth Amendment search or seizure. The Court would decline to so greatly expand the Fourth Amendment. In any case, as indicated herein, Defendant has not alleged any actual First Amendment chilling here.

(Objections ¶ 20.) This argument is not contained in her motion, her memorandum in support of her motion, and, in short, was never presented to the Magistrate Judge in any way. It has been held in many courts, including this one, that the Magistrate Judge Act does not allow parties to raise at the district court stage new arguments or issues that were not presented to the Magistrate Judge, and, indeed, allowing such arguments would frustrate the purpose of the Magistrate Judge Act. *See*, *e.g.*, *Senior v. Hofbauer*, No. 2:08-cv-88, 2010 U.S. Dist. LEXIS 119522, at *5 (W.D. Mich. Nov. 10, 2010); *see also Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing approvingly courts that have held the same). Thus, issues raised for the first time in objections to an R&R are deemed waived. *See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (holding that "an unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate"); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("Allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992), *cert. denied*, 507 U.S. 978 (1993); *and see Marshall v. Chater*, 75 F.3d 1421, 1426-1427 (10th Cir. 1996) (collecting the above and holding the same).

Even if this issue were not procedurally barred, Defendant has not contended that her First Amendment activities were constrained; she has only argued in the abstract that *someone's* First Amendment exercise *might* be chilled. It is, in fact, somewhat difficult to

see how her activities could have been chilled – there is no evidence in the record that she was aware that her vehicle's location was being monitored.  Moreover, Defendant has not provided, and the Court is not aware, of any authority to indicate that suppression of evidence is an appropriate remedy for First Amendment violations.  Inasmuch as this is an original argument before this Court, it is procedurally barred, and even if it were a proper objection to the R&R, it would be overruled.

**D.)** **Other Matters**

With regard to the sections of the R&R not specifically objected to, the Court has reviewed the matters and concludes that the R&R correctly analyzes the issues and makes a sound recommendation.

### III. Conclusion

Defendant warns that the age of Big Brother is upon us.  (Objections ¶ 31.)  As long as Big Brother contents himself to observe us, or rather, not us but our vehicles (and not even our vehicles *per se*, but only our vehicles' locations), as those vehicles traverse public and publically observable roads, the Court remains untroubled.  There being no search, no seizure, and no chilling effect on the exercise of Defendant's First Amendment freedoms, the Court holds that the Constitution is likewise untroubled.  The objections will be denied. An order consistent with this opinion will be entered.

Dated: February 11, 2011               /s/ Robert Holmes Bell                     
                                       ROBERT HOLMES BELL
                                       UNITED STATES DISTRICT JUDGE